Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| MIGUEL OLIVENCIA<br><br>Recurrido<br><br>v.<br><br>PLANET SOLAR ANTILLAS, LLC; GENERAC POWER SYSTEMS, INC.<br><br>Recurrente | KLRA202300643 | *REVISIÓN ADMINISTRATIVA* Procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: MAY-2023-0003445<br><br>Sobre: Ley Núm. 5 de 23 de abril de 1973 |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Álvarez Esnard, jueza ponente

# SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2024.

Comparece ante nos Planet Solar Antillas, LLC ("Planet Solar" o "Recurrente") mediante un *Recurso de Revisión Judicial* presentado el 13 de diciembre de 2023. Nos solicita que revoquemos la *Resolución* emitida y notificada el 10 de octubre de 2023, por el Departamento de Asuntos del Consumidor ("DACo" o "agencia recurrida"). Mediante el referido dictamen, el DACo decretó la resolución del contrato de compraventa suscrito entre Recurrente y el señor Miguel Olivencia ("Sr. Olivencia"). Además, condenó al Recurrente a reembolsar la cantidad de $27,388.00 y remover el equipo solar instalado, a su costo.

Por los fundamentos expuestos a continuación, **confirmamos** la *Resolución* recurrida.

## I.

El 18 de marzo de 2021, el señor Miguel A. Olivencia Martínez ("Sr. Olivencia Martínez" o "Querellante"), la señora Rebeca Morales Ibarrondo y Planet Solar suscribieron un contrato intitulado *Acuerdo de consultoría, diseño, gestoría, e instalación de sistema*

*fotovoltaico con/sin batería de reserva de energía.*[1] Mediante el referido contrato, la compañía Planet Solar instalaría en la residencia del Sr. Olivencia Martínez un sistema fotovoltaico con batería de reserva de energía, el cual estaría garantizado por un periodo de cinco (5) años. Para dicha instalación, el Sr. Olivencia Martínez debía pagar la cantidad de $27,388.30.

Así las cosas, el 17 de enero de 2023, el Sr. Olivencia Martínez incoó una *Querella* ante DACo contra Planet Solar.[2] En síntesis, alegó que el 14 y 16 de mayo de 2021 se instaló en su residencia el sistema de placas solares con la batería, pero el mismo no funcionaba. Sostuvo que procedió a realizar varias llamadas de servicio y la compañía visitó la propiedad. En su visita, determinó que, debido a las fluctuaciones del voltaje en la zona, el sistema solar se comportaba de manera "anormal". Añadió que luego de varios intentos con el sistema, Planet Solar se comprometió a comprarle un regulador de voltaje, el cual nunca le entregaron. Señaló que no se realizó un estudio de carga en la propiedad y de haber sabido que el sistema no funcionaría por el problema de voltaje, no lo hubiese adquirido. Así que, solicitó que le devolvieran el dinero que pagó por el sistema.

Transcurridos varios trámites, el 23 de mayo de 2023, Planet Solar presentó *Contestación a la Querella.*[3] Mediante esta, señaló que no había incumplido con los términos del contrato, toda vez que se había respondido y atendido las llamadas de servicio solicitadas por el Sr. Olivencia Martínez. Indicó que fue este último quien rechazó las citas programadas para brindarle servicio. Esgrimió que se le notificó al Querellante que debía hacer una reclamación en LUMA Energy para que atendiera el problema de voltaje y que había

---

[1] Apéndice recurso, págs. 197-211.
[2] *Íd,* pags. 3-5.
[3] *Íd,* pags. 23-27.

autorizado la adquisición, a su costo, de un regulador de voltaje a instalarse en la residencia del Querellante. Argumentó que no se podía adjudicar la controversia puesto que faltaba acumular como parte indispensable a Generac Power System y a LUMA Energy, además, de que el DACo no tenía jurisdicción sobre la materia. Por lo cual, solicitó que se desestimara con perjuicio la reclamación.

El 23 de mayo de 2023, se celebró una vista administrativa. En esta, la representación legal de la parte Recurrente presentó alegaciones relacionadas a la falta de parte indispensable. Argumentó, entre otras cosas, que no se podía dilucidar la controversia sin la presencia de la compañía Generac Power System, Inc., ("Generac").[4] Además, levantó como defensa que el Sr. Olivencia Martínez se había negado a que le instalaran una pieza a su equipo solar, la cual ayudaría a mitigar el problema de carga de energía del sistema.[5] Con el fin de atender dichos planteamientos, el 25 de mayo de 2023, notificada el 31 del mismo mes y año, el DACo *Notificación* y *Orden,* en la que ordenó lo siguiente:[6]

> Se ordena a la parte querellada Planet Solar Antillas, LLC., coordinar la cita de instalación de regulador de voltaje, con la parte querellante el día 26 de mayo de 2023.
>
> Una vez llevada a cabo la instalación del regulador, la parte querellante monitoreará el funcionamiento del sistema por espacio de 30 días.
>
> Se ordena a la parte querellada, que dentro del término de 10 días provea ante DACO y a la parte querellante, la dirección física y postal de Generac.
>
> Se ordena a la parte querellante enmendar la querella, para incluir a Generac, dentro del término de 15 días contados a partir de la fecha de notificación de la dirección de Generac.

Posteriormente, el 7 de junio de 2023, se presentó *Enmienda a Querella,* en la que incluyó como parte querellada a Generac y alegó que dicha compañía le ofreció un servicio de reparación por

---

[4] Véase *Transcripción de la Prueba Oral* ("TPO"), en el Apéndice recurso, págs. 109-110.
[5] TPO, págs. 112, 119, 126-128 y 131.
[6] Apéndice recurso, págs. 28-31.

garantía.[7] A su vez, notificó que había radicado una querella ante LUMA por el asunto de voltaje de su residencia. El 5 de julio de 2023, Generac presentó *Contestación a querella enmendada y defensas afirmativas,*[8] en la que negó las alegaciones contenidas en la querella y solicitó copia de toda prueba que el Querellante pretendía utilizar en la vista.

Tras varias incidencias procesales, el 13 de septiembre de 2023, se llevó a cabo la continuación de la vista administrativa. Evaluadas las posturas de ambas partes, el 10 de octubre de 2023, el DACo emitió la *Resolución* recurrida, en la que formuló las siguientes determinaciones de hechos:[9]

1. El día 18 de marzo de 2021, la parte querellante, Miguel Olivencia Martínez, otorgó un contrato de compraventa y servicio con la parte querellada, Planet Solar Antillas, LLC., en adelante Planet, de un sistema solar fotovoltaico de 4.07kw. Para esto[,] las partes firmaron un contrato intitulado: "Acuerdo de Consultoría Diseño, Gestoría e Instalación de Sistema Fotovoltaico con/sin Batería de Reserva de Energía".

2. Las partes acordaron que el precio total de los servicios y equipos objeto del contrato fue de $27,388.30. El querellante tomó un préstamo, con un tercero, para adquirir el sistema solar. El querellante pagó en su totalidad el precio acordado a Planet.

3. El contrato incluía las gestiones para la interconexión de generador distribuido mediante el programa de Medición Neta de la Autoridad de Energía Eléctrica (ahora LUMA).

4. La instalación del sistema solar fue llevada a cabo por Planet, entre el 14 de mayo de 2021 y 16 de mayo de 2021.

5. Los equipos instalados, tales como, inversor, micro inversor y batería son marca Generac. Los paneles solares son marca Peimar.

6. Todos los componentes del sistema fotovoltaico y de baterías de reserva de energía utilizados por Planet tendrán la garantía original ofrecida directamente por y con el manufacturero de los mismos. Planet no es responsable por defectos de fábrica de ninguno de los componentes utilizados. Las garantías son del equipo, si hay cambio de dueño, el nuevo dueño sigue con la garantía.

7. La mano de obra de la instalación está garantizada por un término de 5 años, a través de Planet.

---

[7] *Íd,* págs. 50-54.
[8] *Íd,* págs. 46-49.
[9] *Íd,* págs. 75-86.

8. Al momento del diseño e instalación del sistema solar, se basó en la factura de la Autoridad de Energía Eléctrica, el consumo actual (al momento) y/o proyectado de su consumo, aproximado, pies cuadrados requeridos, entre otros (que no se expresan en el contrato). El querellado Planet, para definir el tamaño de su sistema solar, se toma en consideración el consumo promedio diario de los meses anteriores, según provistos por el cliente, para ser producidos en un periodo promedio de 5.5 horas de sol (promedio para Puerto Rico, el cual puede variar según la zona en Puerto Rico), la eficiencia y pérdidas del sistema.

9. **Al momento del querellante otorgar el contrato con la parte querellada, esta no llevó a cabo medidas del voltaje en la residencia; tampoco le advirtió al querellante que si ocurría voltaje alto, el equipo no funcionaría.**

10. **Del querellante haber conocido, que de existir alto voltaje en su residencia y que el equipo dejaba de funcionar debido a esto, no hubiera adquirido el sistema.**

11. **El mismo día que se instaló el sistema solar, este no funcionó.**

12. El querellante le reclamó tanto a Generac como a Planet, que el primer día de instalado el sistema este no funcionaba. El querellante estuvo 3 semanas desde instalado el sistema sin utilizar el mismo.

13. Al mes de instalado el sistema, los querellados Planet y Generac, acudieron a la residencia del querellante, y encontraron, que Planet había olvidado instalar un cable de transfer switch, que procedieron a instalar y el sistema funcionó.

14. Luego de la instalación del cable, el sistema funcionaba en una semana, 3 días si, y 4 días no, o 4 días si y 3 días no, o 2 días si y 5 días no. El sistema no operaba en su totalidad todas las semanas.

15. Para el 6 de junio de 2021, no hubo servicio de energía eléctrica en la residencia del querellante por 4 días, y el sistema no funcionó.

16. El querellante reclamó a Generac y Planet que el sistema no operaba, lo que dio lugar a que representantes de Generac y de Planet acudieran a la residencia del querellante a verificar. Durante dicha visita, se presentó el Sr. Enrique Aponte, representante del querellado Planet, en compañía del ingeniero Fermín Tovar, en representación de Generac. **Ambos representantes querellados, le explicaron al querellante que debido a las fluctuaciones de voltaje en la zona el sistema no operaba normal.**

17. La Sra. Juliana, empleada de Planet, era la persona con quien el querellante se contactaba para brindarle la información de las quejas del problema del sistema.

18. Ante las constantes reclamaciones del querellante, el querellado Planet se comprometió en instalar un regulador de voltaje para lidiar con la situación de alto voltaje en la residencia, y de esta manera el querellante pudiera utilizar el sistema adquirido.

19. El regulador de voltaje se encargaría de enviar a la residencia la energía eléctrica necesaria que requiere la residencia.

20. El querellante se mantuvo constantemente en comunicación tanto con Planet como con Generac, informando que el sistema no estaba operando efectivamente.

21. Ante las reclamaciones del querellado, Generac autorizó el reemplazo del inversor, el cual Planet instaló.

22. El 18 de septiembre de 2022, el Huracán Fiona pasó por el área suroeste de Puerto Rico. Debido al paso del Huracán, varias zonas de Puerto Rico se vieron afectadas quedándose sin servicio de energía eléctrica. Ante la ausencia de servicio de energía eléctrica, el sistema solar del querellante operó, y luego cuando regresó el servicio de energía eléctrica el sistema dejó de funcionar nuevamente.

23. La parte querellante volvió a reclamar a Planet, ante lo cual acudió un técnico y determinó que hay problemas con el inversor, y es entonces que Generac autoriza el reemplazo nuevamente del inversor, y Planet lo instaló.

24. Luego del reemplazo del inversor, el sistema solar continuó presentando problemas. En la última visita de los técnicos, estos desconectaron el sistema porque no estaba operando debido a las altas fluctuaciones de voltaje en la residencia.

25. **El querellado Planet, no instaló el regulador de voltaje que había prometido al querellante.**

26. El querellante presentó una querella en la compañía Luma, debido al problema de alto voltaje. A pesar de la querella presentada, y las llamadas del querellante, LUMA nunca ha acudido a la residencia, ni ha corregido la situación de alto voltaje.

27. El día 17 de enero de 2023, la parte querellante presentó ante este Departamento la querella de epígrafe.

28. El 23 de mayo de 2023, la parte querellada Planet, presentó Contestación a Querella, en la cual se alegó y expuso en el inciso 7 y 8, que Planet autorizó la adquisición, a su costo, de un regulador de voltaje a instalarse en la residencia del querellante y que de inmediato se instruyó a un comprador para que realizara las gestiones; que el regulador debía adquirirse fuera de Puerto Rico y tomaría un tiempo en llegar, datos que fueron informados al querellante por el personal de Planet.

29. El día 23 de marzo de 2023, se celebró una vista administrativa que se convirtió en una vista de estado de los procedimientos. Durante dicha vista se atendieron varios asuntos y planteamientos, y este Departamento emitió la siguiente Notificación y Orden:

"NOTIFICACION"

El día 23 de mayo de 2023, las partes de epígrafe comparecieron a la celebración de una vista administrativa.

Durante la vista administrativa, se atendieron varios asuntos, entre ellos el trabajo de instalación de u regulador de voltaje ofrecido por el querellado, para esto la parte querellada se comunicará con la parte querellante el día 26 de mayo de 2023, para coordinar una cita de instalación. Una vez llevada a cabo la instalación del regulador, la parte querellante monitoreará el funcionamiento del sistema por espacio de 30 días. Quedó establecido en la vista, que la instalación

del equipo no se interpreta como desistimiento de la parte querellante con la querella presentada.

Por otro lado, se atendió el planteamiento de que no fue incluido en la querella, como parte querellada, el manufacturero de los equipos y quien provee la garantía, Generac. Se ordenó en sala a la parte querellada, que en el termino de 10 días debía proveer la dirección física y postal de Generac.

Se ordenó en sala, que la parte querellante tiene 15 días a partir de la fecha de notificación de la dirección de Generac, para presentar enmienda a querella para incluir al manufacturero Generac.

Posteriormente se citará a las partes a una vista administrativa.

Por todo lo antes expuesto, este Departamento, en virtud de las facultades conferidas por la Ley Número 5 del 23 de abril de 1973, según enmendada, emite la siguiente:

ORDEN

Se ordena a la parte querellada Planet Solar Antillas, LLC., coordinar la cita de instalación de regulador de voltaje, con la parte querellante el día 26 de mayo de 2023.

Una vez llevada a cabo la instalación del regulador, la parte querellante monitoreará el funcionamiento del sistema por espacio de 30 días.

Se ordena a la parte querellada, que dentro del término de 10 días provea ante DACO y a la parte querellante, la dirección física y postal de Generac.

Se ordena a la parte querellante enmendar la querella, para incluir a Generac, dentro del término de 15 días contados a partir de la fecha de notificación de la dirección de Generac.

30. El día 7 de junio de 2023, la parte querellante enmendó la querella para incluir a la parte co querellada Generac Power System, Inc.

31. Luego de incluido Generac en la querella, este autorizó el reemplazo de la batería del sistema, lo cual así se hizo. A pesar del cambio de la batería, el sistema continuó sin poder ser utilizado.

32. El querellado Planet, no instaló el regulador de voltaje.

33. En el acto de la vista administrativa, del 13 de septiembre de 2023, la representante legal del querellado Planet estableció que el costo del regulador de voltaje ascendía sobre $3,000.00, y que la compra e instalación le correspondía al cliente (querellante), por lo que Planet no lo instaló.

34. El sistema solar adquirido por el querellante se encuentra desconectado por instrucciones de Planet, cuando visitó al querellante, debido a voltaje alto. El querellado solo usa la energía eléctrica proveniente de LUMA. Nunca ha utilizado el Programa de Medición Neta el cual indicaba el contrato otorgado que se inscribiría ante AEE.

35. El querellante no ha podido hacer uso efectivo del sistema solar adquirido a Planet. (Énfasis nuestro).

En esencia, el DACo resolvió que el Sr. Olivencia Martínez fue engañado en la contratación de la compra del sistema solar, puesto

que Planet Solar guardó silencio sobre los asuntos relacionados a que el alto voltaje de la propiedad provocaría que el sistema no pudiera cumplir su función. Sostuvo que **"el vendedor [Planet Solar] tiene el deber de notificar al comprador las diferentes situaciones que ocurren con el sistema solar a consecuencia de los voltajes, en esencia el vendedor debe manifestare al comprador lego todo lo relacionado con estos sistemas solares, para que este tome una decisión informada y consciente de lo que está ocurriendo"**. (Énfasis nuestro). Al no haberse informado al Sr. Olivencia Martínez sobre el asunto del voltaje, se configuró el dolo en la contratación. Siendo así, determinó que procedía decretar la nulidad del contrato, por la existencia de dolo grave que vició el consentimiento. En consecuencia, ordenó a Planet Solar a reembolsar la suma de $27,388.00 y a remover, a su costo, los equipos instalados en la residencia del Sr. Olivencia Martínez.

En desacuerdo, el 30 de octubre de 2023, Planet Solar presentó su *Moción de Reconsideración,*[10] la cual no fue acogida por el DACo. Ante ello, el 13 de diciembre de 2023, Planet Solar acudió ante nos mediante un *Recurso de Revisión Judicial,* en el que formuló los siguientes señalamientos de error:

> Erró el Departamento de Asuntos del Consumidor, Oficina Regional de Mayagüez, al asumir jurisdicción sobre la controversia pues la legislación vigente confiere jurisdicción primaria exclusiva al Negociado de Energía de Puerto Rico, en particular sobre el trasbordo de energía eléctrica o interconexión con la red de transmisión y distribución.
>
> Erró el Departamento de Asuntos del Consumidor, Oficina Regional de Mayagüez, al determinar que Planet Solar Antillas, LLC incurrió en dolo grave y, por tanto, resolver el contrato otorgado por las partes.

El 21 de diciembre de 2023, esta Curia emitió *Resolución* en la que le confirió un término de treinta (30) días a la parte Recurrida para que expusiera su oposición al recurso instado. En vista de que

---

[10] Apéndice recurso, págs. 92-102.

dicha parte no compareció, procedemos a resolver la controversia sin el beneficio de su comparecencia.

## II.

### *A. Revisión Administrativa*

Las determinaciones administrativas están sujetas al proceso de revisión judicial ante el Tribunal de Apelaciones. Artículo 4.006 de la Ley de la Judicatura, Ley Núm. 201-2003, 4 LPRA sec. 24y; *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018). La Sección 4.6 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9676, ("LPAU"), faculta al tribunal intermedio a revisar decisiones, órdenes y resoluciones finales de organismos administrativos. Ahora bien, el proceso de revisión judicial está limitado a determinar: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hechos de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas. *Asoc. FCIAS. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Véase, también, *Mun. de San Juan v. J.C.A.* 149 DPR 263, 279 (1999). Los tribunales apelativos debemos sostener los dictámenes agenciales a menos que la presunción de legalidad haya sido superada. *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).

Las determinaciones administrativas se sostendrán siempre y cuando estén fundamentadas en evidencia sustancial que obre del expediente. Sección 4.5 de la LPAU, *supra,* 3 LPRA sec. 9675. La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012); *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 512 (2011).

En ese sentido, "la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables". *OEG v. Martínez Giraud, supra*, pág. 89.

Por otro lado, "**cuando de conclusiones de derecho se trata, los tribunales tenemos una amplia facultad de revisarlas completa y absolutamente".** *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997). La Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos". Solo intervendremos cuando la actuación administrativa resulte arbitraria, ilegal o irrazonable. *Capó Cruz v. Jta. Planificación et al., supra*, pág. 592. Lo anterior "no equivale a la sustitución automática del criterio e interpretación del organismo administrativo". *Íd.,* pág. 591; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). La determinación de una agencia merece deferencia sustancial aun cuando su interpretación no sea la única razonable. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011).

### B. *Orden 2022-002 e Interpretación Administrativa 2022-003 del DACo*

Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341 *et seq.,* ("Ley Núm. 5"), faculta al Departamento de Asuntos del Consumidor ("DACo") a "vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias; así como el establecimiento y fiscalización de un control de precios sobre los artículos y servicios de uso y consumo". 3 LPRA sec. 341b. Para cumplir con dicho deber ministerial, el Artículo 6 de la precitada Ley faculta al DACo para, entre otros:

(a) Reglamentar, fijar, controlar, congelar y revisar los precios, márgenes de ganancias y las tasas de rendimiento sobre capitales invertidos a todos los niveles de mercadeo, sobre los artículos, productos y aquellos servicios que corriente y tradicionalmente se prestan y se cobran por horas o por unidad, se ofrezcan o se vendan en Puerto Rico, en aquellos casos que tales medidas se justifiquen para proteger al consumidor de alzas injustificadas en los precios, evitar el deterioro del poder adquisitivo del consumidor, y proteger la economía de presiones inflacionarias. [...].

[...].

(c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. [...].

(d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho. [...].

[...].

(i) Interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de esta ley y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento. [...].

(j) **Reglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio**, incluyendo la facultad de fiscalizar los reclamos sobre la calidad y demás cualidades de los productos y servicios, realizados a través de los distintos medios de comunicación, así como requerir de los anunciantes evidencia de la veracidad de los reclamos realizados.

[...].

(l) Promover y establecer normas de calidad, seguridad e idoneidad en los servicios y en los productos de uso y consumo y requerir su cumplimiento. El Secretario podrá requerirle, dentro de un tiempo razonable, a toda empresa que venda algún producto u ofrezca algún servicio en Puerto Rico y que sea objeto de una querella, investigación rutinaria o información que impugne la idoneidad del producto o servicio, que lleve a cabo pruebas de calidad, seguridad e idoneidad, realizadas según se disponga específicamente en cada caso y costeadas por la propia empresa. [...].

[...].

(s) **En coordinación con las demás agencias y departamentos del Estado Libre Asociado de Puerto Rico, promover y velar por el cumplimiento de todas las leyes, reglas, reglamentos y órdenes que afecten los intereses del consumidor.**

[...].

(z) Establecer un sistema de licencias y de fianzas para la venta y alquiler de bienes, productos y servicios que se ofrezcan en Puerto Rico, cuando ello sea necesario y propio para poner en efecto los propósitos de esta ley. [...]. (Énfasis nuestro). 3 LPRA sec. 341e.

Asimismo, el Artículo 8 (a) de la Ley Núm. 5, *supra,* dispone que "[e]l Secretario tendrá poder para aprobar, enmendar o revocar

aquellas reglas, reglamentos, órdenes, resoluciones y determinaciones necesarias al cumplimiento de esta ley". 3 LPRA sec. 341g.

Al amparo de las facultades conferidas, el 9 de febrero de 2022, el Secretario del DACo emitió la *Interpretación 2022-03 para Aclarar Aspectos Jurisdiccionales del Foro Adjudicativo del DACO Respecto a los Comercios que Ofrecen Servicios de Venta, Instalación y/o Mantenimiento de Sistemas de Placas Solares* ("Interpretación 2022-03"). El propósito de la Interpretación 2022-03 es aclarar que tanto el Negociado de Energía de Puerto Rico ("Negociado"), como el DACo ostentan jurisdicción sobre las posibles controversias relacionadas a los sistemas de placas solares. Por ello, la aludida Interpretación sirve a los fines de "delimitar el marco de acción de cada agencia, así como los efectos que pudiera tener sobre dicha jurisdicción la existencia de una cláusula de arbitraje".

En cuanto a la jurisdicción, la Interpretación 2022-03, *supra,* dispone que el DACo ostenta jurisdicción para atender querellas relacionadas a servicios de paneles o placas solares, siempre que tales reclamaciones no contengan alegaciones que giren en torno a aspectos de jurisdicción primaria del Negociado. Sobre ello, expone el documento, que el Tribunal de Apelaciones ha avalado la jurisdicción del DACo en los siguientes escenarios: 1) controversias relacionadas a los servicios en garantía; 2) alegaciones por incumplimiento contractual, por productos defectuosos, ya sean placas solares o las baterías; y 3) cualquier controversia relacionada a la adquisición de un producto (las placas o las baterías), la instalación y los servicios prestados en relación a los mismos. A su vez, el DACo ostenta jurisdicción sobre todos los asuntos relacionados a prácticas engañosas y cuando surjan alegaciones de daños a la propiedad, como resultado de la instalación defectuosa de un sistema de placas solares.

En síntesis, **el DACo ostentará jurisdicción sobre todo caso relacionado a la compraventa, instalación y mantenimiento de servicios de placas solares,** "siempre que no estén de por medio asuntos en torno a la producción de energía, los métodos de facturación, las tarifas o los problemas de interconexión". En cualquier caso que se argumente la nulidad del contrato, se hará innecesario discutir la validez o no de una cláusula en particular y "la jurisdicción del foro adjudicativo del DAC[o] sería incuestionable".

Por su parte, la Interpretación 2022-03, *supra,* establece que el Negociado tiene jurisdicción primaria exclusiva sobre los casos y controversias relacionadas con:

- La política pública energética del Gobierno de Puerto Rico;
- Las tarifas y cargos que establezca la Autoridad y cualquier productor independiente de energía;
- Trasbordo de energía eléctrica o interconexión entre la Autoridad o sus subsidiarias, y toda persona que esté, o interese estar, conectada a la red de energía eléctrica o con un interés en esos servicios; y
- Los contratos entre la Autoridad y los productores independientes de energía, así como entre productores independientes de energía, incluidos los casos en que se cuestione la razonabilidad de las tarifas de interconexión, o la razonabilidad de los términos y condiciones de un contrato de compra de energía.

El Negociado cuenta con un procedimiento adjudicativo, en el cual puede comparecer para instar una reclamación el Programa de Política Pública Energética del Departamento de Desarrollo Económico, contra "cualquier persona que este incurriendo o haya incurrido en acciones u omisiones contrarias a la política pública energética del Gobierno, y la Oficina Independiente de Protección al Consumidor (OIPC)". A su vez, la OIPC tendrá facultad para presentar querellas o recursos legales ante el Negociado, a nombre o en representación de clientes de servicio eléctrico, sobre controversias relacionadas a lo siguiente: factura, tarifas y cargos de la Autoridad de Energía Eléctrica o de productores

independientes de energía, política publica energética, asuntos ambientales, controversias sobre los servicios de cualquier compañía de cualquier servicio eléctrico u otro asunto que afecte los intereses o derechos de los clientes del servicio eléctrico. Así, la Interpretación 2022-03, *supra,* aclara que el Negociado tendrá jurisdicción primaria "cuando están de por medio asuntos relacionados con la producción de energía, los métodos de facturación y/o las tarifas impuestas a los consumidores". En estos casos, "el DAC[o] está impedido de actuar directamente".

De otro lado, el 9 de febrero de 2023 el DACo emitió la *Orden 2022-002 para Detallar los Principales Pasos a Seguir Cuando se Radique una Querella Relacionada a Servicios de Venta, Instalación y Mantenimiento de Sistemas de Placas Solares* ("Orden 2022-002"). Dicha orden fue emitida con el propósito de facilitar el trámite interno del DACo, en los casos que la agencia cuente con jurisdicción, según dispone la Interpretación 2022-003, *supra.*

### C. Dolo en la contratación

Nuestro ordenamiento contractual sostiene que "[e]l contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones." 31 LPRA sec. 9751. Los contratos se perfeccionan "desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". 31 LPRA sec. 9771. Una vez concurra los elementos de objeto, causa y consentimiento, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". 31 LPRA sec. 9754. Véase, además, *Blanco Matos v. Colón Mulero*, 200 DPR 398, 407-408 (2018).

En cuanto al consentimiento, el Artículo 1218 del Código Civil de Puerto Rico de 2020, ("Código Civil") dispone que "[e]xiste consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación". 31 LPRA sec. 9772. Sin embargo, **en los casos que se celebre un negocio jurídico en el que medie un vicio de la voluntad, dicho negocio será anulable** si el vicio fue determinante para su otorgamiento. 31 LPRA sec. 6192. (Énfasis nuestro). Sobre ello, el Artículo 285 del Código Civil, *supra,* dispone que será un vicio de la voluntad el error, el dolo, la violencia y la intimidación. 31 LPRA sec. 6191. "El causante del dolo, la violencia o la intimidación queda sujeto a la indemnización de los daños y perjuicios resultantes." 31 LPRA sec. 6192. Ello, debido a que "[l]a autonomía de la voluntad es uno de los principios cardinales que rigen las relaciones contractuales en nuestro ordenamiento". *Blanco Matos v. Colón Mulero, supra.*

Sobre el caso particular del dolo, el Código Civil dicta que el dolo grave es "la acción u omisión intencional por la cual una parte o un tercero **inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado**. Si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra." 31 LPRA sec. 6211. (Énfasis nuestro). A su vez, el Artículo 1164 del Código Civil, *supra,* establece que el dolo "consiste en el incumplimiento deliberado y de mala fe de la obligación." 31 LPRA sec. 9316. El dolo ha sido entendido como "todo un complejo de malas artes, contrario a las leyes de la honestidad e idóneo para sorprender la buena fe ajena, generalmente en propio beneficio". *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 63 (2011) citando a, L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial,* 6ta ed. Navarra, Ed. Thomson/Arazandi, 2007, Vol. I, pág. 170.

El elemento objetivo del dolo puede consistir en cualquier conducta como astucias, argucias, mentiras, sugestiones, artificios, invención de hechos falsos, ocultación de los existentes o en suministrar referencias incompletas de éstos. *S.L.G. Ortiz-Alvarado v. Great American, supra,* págs. 64-65. El dolo "se caracteriza como la infracción voluntaria y consciente de un deber jurídico que ocasiona al otro contratante un perjuicio del que debe responder". *Íd,* pág. 68, citando a *Márquez v. Torres Campos,* 111 DPR 854, 865 (1982). En los casos en los que medie dolo incidental, no se invalidará el negocio jurídico, "pero su autor debe indemnizar el daño causado. El dolo recíproco no invalida el negocio ni obliga a resarcir." 31 LPRA sec. 6213.

Por otro lado, "existe otra aplicación del dolo contractual que surge, no en la etapa de la contratación, sino en el curso de la consumación del contrato. Este consiste en la omisión consciente, intencionada y voluntaria de eludir el cumplimiento de la obligación, con conocimiento de que se realiza un acto injusto". *Colón v. Promo Motors Imports, Inc.* 144 DPR 659 (1997), citando a *Canales v. Pan American,* 112 DPR 329, 340 (1982). El dolo no se presume, por lo cual, no se puede establecer mediante meras alegaciones, sino "corresponde a quien reclama dicha conducta dolosa la responsabilidad de la prueba". *Colón v. Promo Motor Imports, Inc., supra,* pág. 669. "La prueba de la existencia del vicio y de su carácter incumbe a quien lo alega." 31 LPRA sec. 6192.

**III.**

En el presente recurso, la parte Recurrente nos alega que erró el DACo al emitir la *Resolución* recurrida. En particular, señala que la agencia recurrida reconoció en su dictamen que el Querellante tiene un problema de voltajes en su residencia, lo que implica que la jurisdicción sobre dicha controversia la ostenta el Negociado de Energía y no DACo.

En su primer error, el Recurrente nos invita a examinar, de manera prioritaria, si el DACo ostenta jurisdicción sobre la controversia de autos. Contestamos en la afirmativa.

Según surge del expediente del caso de epígrafe, el Sr. Olivencia Martínez instó una *Querella* ante el DACo en la que alegó que compró un sistema de placas solares con baterías a Planet Solar, el cual estuvo defectuoso desde el momento de la instalación. Afirmó que realizó varias llamadas de servicio a la compañía Recurrente y recibió varias visitas, en las que le notificaron que su residencia tenía un problema de voltaje, que provocaba que el sistema actuara de manera "anormal". Señaló que, de haber conocido que el problema de voltaje ocasionaba que el sistema no funcionara, no lo hubiese adquirido. Además, alegó que la compañía le prometió un regulador de voltaje para atender el problema, el cual nunca le instaló.

De una lectura a las alegaciones contenidas en la querella y de las determinaciones de hechos realizadas por el DACo, no nos alberga duda que el DACo ostentaba jurisdicción para atender la controversia presentada por el Sr. Olivencia Martínez, de conformidad con la Interpretación 2022-003, *supra.* El precitado documento, dispone que el DACo ostenta jurisdicción **sobre todo caso relacionado a la compraventa, instalación y mantenimiento de servicios de placas solares,** "siempre que no estén de por medio asuntos en torno a la producción de energía, los métodos de facturación, las tarifas o los problemas de interconexión". Además, la Interpretación 2022-003, *supra,* faculta a la agencia recurrida a atender todos los asuntos relacionados a **prácticas engañosas** en la contratación.

La cuestión principal que estaba ante la consideración de la agencia recurrida no era el problema del voltaje. Más bien, la controversia de autos versa sobre si medió alguna práctica engañosa

o algún vicio del consentimiento por parte de Planet Solar **al momento de la contratación** de la compra del sistema solar. Además, el Sr. Olivencia Martínez expone que el sistema es uno defectuoso, que no cumple las funciones para la cual fue adquirido y que la compañía no lo orientó sobre el hecho de que algún problema de voltaje en su residencia podría dificultar el funcionamiento del sistema. Asimismo, alegó que la compañía Recurrente lo engañó al no instalarle un regulador de voltaje que le prometió.

Lo anterior pone de manifiesto que la querella incoada por el Sr. Olivencia Martínez contiene alegaciones que pudieran dar lugar a una práctica engañosa por parte de una compañía solar e incide directamente sobre uno elementos esenciales del otorgamiento del contrato, el consentimiento. Por tal razón, coincidimos que el DACo es el foro con jurisdicción para ventilar los reclamos del Sr. Olivencia Martínez.

En cuanto al segundo error, la parte Recurrente sostiene que erró el DACo al determinar que existió dolo en la contratación. Señala que, como parte de los acuerdos, Planet Solar nunca se obligó a instalar un regulador de voltaje. Arguye que en la vista administrativa celebrada el 13 de septiembre de 2023, el Sr. Olivencia Martínez reconoció que leyó el contrato y que la propia *Resolución* emitida por el DACo reconoce que se cumplieron con las obligaciones que emanan del acuerdo. Añade que el Querellante no logró demostrar que Planet Solar conocía, antes de celebrado el contrato, que existía un problema de voltaje en la residencia, por lo que no se pudo probar la existencia de dolo en la contratación. Por tanto, procede que se revoque la *Resolución* que aquí se recurre.

Conforme a nuestro ordenamiento, e]xiste consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación". 31 LPRA sec. 9772. Sin embargo, **en los casos que**

**se celebre un negocio jurídico en el que medie un vicio de la voluntad, dicho negocio será anulable** si el vicio fue determinante para su otorgamiento. 31 LPRA sec. 6192. (Énfasis nuestro).

En el presente caso, el Sr. Olivencia Martínez logró demostrar ante el DACo que adquirió un sistema solar de la compañía Planet Solar, el cual nunca estuvo en funcionamiento. En la vista celebrada el 13 de septiembre de 2023, este declaró que en ningún momento fue orientado por el Recurrente que las fluctuaciones de carga de energía en su residencia provocarían que el sistema solar no funcionara, ni tampoco realizaron pruebas de cargas antes o después de la instalación.[11] Testificó que si hubiese sabido tal información, nunca hubiese adquirido el equipo.[12] A pesar de que indicó, a preguntas del Recurrente, que leyó el contrato y que este contenía unas cláusulas relacionadas a las limitaciones de responsabilidad de Planet Solar, señaló que la compañía Recurrente le prometió hacia dos (2) años atrás que le instalaría un regulador de voltaje, lo cual nunca realizó.[13]

Nuestro ordenamiento dicta que constituye dolo grave "la acción u omisión intencional por la cual una parte o un tercero **inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado**. 31 LPRA sec. 6211. En el caso de autos, contrario a lo que nos alega la parte Recurrente, somos del criterio que medió un vicio del consentimiento en la contratación. El Sr. Olivencia Martínez demostró mediante su testimonio que Planet Solar, compañía que se dedica a hacer negocios de "consultoría energética, gestoría, venta, instalación de sistemas fotovoltaicos y baterías de reserva de energía", ocultó al momento de la contratación elementos esenciales sobre el funcionamiento de los

---

[11] TPO, págs. 149-150.
[12] *Íd.*
[13] *Íd*, págs. 152, 156 y 163-166.

sistemas de placas solares que vende. Planet Solar, quien es el que se dedica a la industria de venta de sistemas solares, debió haber informado sobre las posibles situaciones que afectan el funcionamiento del sistema, según la práctica que ejerce. Ello no significa que esta compañía solar tiene el deber de predecir cualquier escenario inimaginable, sino que era su deber, al momento de la contratación, informar de los escenarios recurrentes de la industria que dificultan el aprovechamiento óptimo del sistema que está vendiendo a los consumidores.

Por otro lado, coincidimos con el DACo en que el Recurrente incumplió con su promesa y/u obligación de instalar un regulador de voltaje en la residencia para el mejor funcionamiento del sistema solar. Según surge de la transcripción de la vista celebrada el 23 de mayo de 2023, la representación legal de la parte Recurrente alegó que el Sr. Olivencia Martínez se había negado a la instalación de un regulador de voltaje que tendría como fin "subsanar el problema de carga".[14] Sobre la aludida pieza, la representante legal de Planet argumentó que se trataba de "una pieza que estaba dentro del contrato, pero por la dilación en lo que la pieza llegó, Planet lo iba a asumir a su costo [...]."[15] Es decir, "el regulador [de voltaje] que se le ofreció [al Sr. Olivencia Martínez] es parte de la garantía".[16] Con el fin de que Planet Solar pudiera instalar la aludida pieza en la residencia del Querellante, el DACo emitió una *Orden* en la que le concedió un término al Recurrente para instalar la pieza y a partir de la instalación, el Sr. Olivencia Martínez debía monitorear el sistema por un término de treinta (30) días. No obstante, el día la continuación de la vista, el 13 de septiembre de 2023, la representante de Planet Solar informó que no se instaló el regulador

---

[14] *Íd*, págs. 112, 119 y 126.
[15] *Íd*, pág. 118.
[16] *Íd*, pág. 131.

en la residencia del Querellante y que este último tenía que sufragar los gastos de la compra de la pieza. Añadió que el problema de la luz no le corresponde resolverlo a Planet Solar.[17]

Como mencionamos, la compañía Recurrente incumplió con los propios acuerdos a los que se obligó mediante el contrato suscrito y los establecidos en sala el día de la celebración de la vista administrativa. Su acción de omitir información sustancial al momento de la contratación y de incumplir con la promesa de instalar un regulador de voltaje, **que por sus propias palabras era parte de la garantía**, dio lugar a que la agencia recurrida resolviera el contrato. Ante las circunstancias antes expuestas, concluimos que actuó correctamente al anular el contrato entre las partes y decretar la devolución de prestaciones. En ausencia de abuso de discreción o haya actuado de manera arbitraria, irrazonable o ilegalmente, no encontramos razón para apartarnos de la norma de deferencia que los tribunales deben conferirle a las determinaciones finales de los foros administrativos. Por tanto, procede que confirmamos el dictamen emitido.

**IV.**

Por los fundamentos expuestos, **confirmamos** la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[17] *Íd*, pág. 146.